IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CLAIR ALLEN LOVERIDGE,

    **Petitioner,**

v.                                              Civil Action No. 1:06cv6
                                              Criminal Action No. 1:03cr63(1)
                                              (Judge Keeley)

UNITED STATES OF AMERICA,

    **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On January 6, 2006, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. On May 22, 2006, the undersigned conducted a preliminary review of the file, determined that summary dismissal was not warranted at that time, and directed the respondent to file an answer. The respondent filed an answer on June 29, 2006, to which the petitioner replied on July 20, 2006. The petitioner subsequently filed three Addendums in support of his claims. This case is before the undersigned pursuant to LR PL P 83.01, et seq., and Standing Order No. 4.

### I. Facts

**A.    Conviction and Sentence**

On April 20, 2004, the petitioner signed a plea agreement by which he agreed to plead guilty to Count Five of the indictment, felon in possession in violation of Title 18, United States Code, Section 922(g)(1). See Plea Agreement (Crim. Dckt. 34) at ¶ 1. In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Id. at ¶ 10. Specifically, the petitioner's plea agreement contained the following language regarding waiver:

> 10. Mr. Loveridge is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, in exchange for the concessions made by the United States in this plea agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28 United States Code, Section 2255. The United States waives its right to appeal the sentence. The parties have the right during any appeal to argue in support of the sentence.

On April 27, 2004, the petitioner entered his plea in open court. At that time, the petitioner was 44 years old and had obtained a General Equivalency Diploma (GED). Plea Transcript (Crim. Dckt. 50) at 6. Prior to his arrest, the petitioner had been gainfully employed as a carpenter for a construction company that builds houses. Id. at 6-7. The petitioner was asked whether he was under the influence of any drugs or alcohol at the time of the plea hearing, and the petitioner asserted that, but for recently taking a Sudafed sinus pill, he was not. Id. at 7. The petitioner then confirmed that he could see and hear, that he knew how to read, that he understood why he was in Court that day, and that it was his signature on the plea agreement. Id. at 8.

Next, the Court read Count Five of the Indictment in open court. Id. The petitioner confirmed that he was familiar with Count Five of indictment and that he had "read it many times." Id. at 8-9. The petitioner stated that he understood the elements of the charge and what the government would have to prove beyond a reasonable doubt if the case went to trial. Id. at 9-10. The government then summarized the terms of the plea agreement in open court. Id. at 10-14. The Court confirmed that the petitioner had reviewed and discussed the plea agreement with counsel prior to signing it. Id. at 14. Moreover, the petitioner confirmed that the government's oral

2

summation of the plea agreement reflected his understanding of the terms. Id.

The Court then reviewed certain provisions of the plea agreement with the petitioner. Id. at 14-20. In particular, the Court reviewed the waiver provisions of the plea agreement. Id. at 15-19. When the petitioner stated that he did not understand, the Court expressly explained those provisions and allowed the petitioner to consult with counsel regarding those provisions. Id. at 15-19. With respect to this provision, the following exchange occurred:

> **Mr. Walker** (petitioners' counsel): Mr. Loveridge and I have discussed paragraph number ten. I think when he referred to what we didn't – what he wasn't aware of would be that I have not given him a copy of Title 18, Section 3742 or Title 28, Section 2255.
>
> **The Court:** Oh, the sections of the Code.
>
> **Mr. Walker:** I did not actually provide him with copies of the Code . . .
>
> **The Court:** Do you want to see those sections, Mr. Loveridge?
>
> **Mr. Walker:** Beyond that, Your Honor, I want Mr. Loveridge to be fully informed and I've been working with him over the past couple of weeks so that I could answer every single question that he may have or suggest to me that he has about this agreement. So I'm happy at this time to show him copies of those statutes if he would like and I essentially explained the appeal rights and waiver of provisions with Mr. Loveridge in the same way the Court did. As a general matter he would be waiving his right to appeal unless the Court imposed a sentence outside the statutory maximum, which it's my belief Mr. Loveridge and I have discussed the ten years in this case. Mr. Loveridge and I have discussed the issue of his criminal history at length in a very detailed and exhaustive fashion, including recruiting the services of my investigator to independently investigate and research that, so that's something that we have discussed and I think he's fully informed about it.
>
> **The Court:** Okay.
>
> **Mr. Walker:** At this time, Your Honor, at Mr. Loveridge's request, I'll let him see those sections.
>
> **The Court:** All right, that's fine.
>
> (Pause)

3

**Mr. Walker:** That you for giving us that opportunity, Your Honor. I've reviewed the critical portions of both of the statutes that Mr. Loveridge brought up. I essentially restated what the Court told Mr. Loveridge, that as a general proposition, people in his position have a right to appeal but due to the waiver provision in the plea agreement, he's going to give up a number of those rights to appeal; told him that there are certain exceptions; a sentence that's imposed in excess of the statutory maximum, also if he believed the Court doesn't have jurisdiction in the first place to listen to the case, he would still retain his right to appeal because that can never be waived.

**The Court:** Right.

**Mr. Walker:** And then, finally, anything that would relate to my failure to perform, ineffective assistance of counsel. So he's – he's aware of the rights. He's aware of the nature of the waiver and he's aware of the exceptions to the waiver. I think he'll tell the Court the same thing.

**The Court:** All right. Mr. Loveridge, do you agree with what your lawyer just said?

**The Defendant:** I do, Your Honor.

Id. at 17-19.

Next, the Court confirmed there were no other oral or written agreements between the parties. Id. at 19. Once that was established, the Court ordered the original plea agreement filed and discussed the penalties associated with Count Five of the indictment. Id. at 20. The Court then informed the petitioner that a presentence investigation report ("PSI") would be filed by the probation office and that he could be subject to an armed career criminal enhancement if so indicated by the PSI. Id. at 21. The Court explained what effect such a finding would have on his possible sentence, and how that would affect his waiver of appeal and collateral rights. Id. at 21-22. The petitioner stated that he understood. Id. The Court also explained the other aspects of the petitioner's potential sentence, such as supervised release, fine and special assessment. Id. at 23-27. The Court then explained how the government's nonbinding recommendations could affect his sentence and how the petitioner's prior criminal history could affect his sentence. Id. at 24, 27.

4

The Court then confirmed that the petitioner understood that it could not determine his actual sentence until such time as the probation office prepared and submitted a PSI. Id. at 28. In addition, the Court explained that both the government and the defense would have the opportunity to review and object to the PSI. Id. The Court again confirmed that the petitioner understood that he was waiving his right to appeal or collaterally attack his sentence. Id. The Court further explained that it was not bound by the recommendations in the plea agreement and the rights the petitioner would be giving up by pleading guilty. Id. at 29-31. The Court again explained that by entering into the plea agreement, the petitioner was restricting his right to appeal and collaterally attack his sentence. Id. at 31-32. The petitioner stated that he understood all the rights and privileges he was giving up by pleading guilty and stated he intended to go forward. Id. at 32. Counsel for the petitioner also stated that he believed the petitioner understood the full consequences of pleading guilty. Id.

At this point, the government presented testimony from ATF Special Agent Christopher Robinson to establish a factual basis for the plea. Id. at 32-36. After Agent Robinson testified, the petitioner was asked whether he would like to add to or correct any of the Agent's testimony. Id. at 36. After conferring with counsel, and after some additional discussion, the petitioner stated that he did in fact do as Agent Robinson said, possessed a firearm in the back bedroom of his house. Id. at 42. The petitioner then pled guilty to Count Five of the Indictment. Id. at 42. The petitioner also confirmed that his plea was not a result of any threat, coercion or force, and that the government had not made any promises outside those contained in the plea agreement to induce him to plead guilty. Id. The petitioner also confirmed that counsel had adequately represented him up to this point, and that counsel had not left anything undone. Id. at 43.

After considering all of the petitioner's statements made under oath at the plea hearing, the

Court found that the petitioner was competent and capable of entering an informed plea. Id. at 47. Moreover, the Court found that the petitioner's plea to Count Five was freely and voluntarily made and that the petitioner knew what he was doing by entering the plea. Id. In addition, the Court found that the petitioner was aware of the consequences of his plea and that there was a factual basis for the plea. Id. The Court then accepted the petitioner's guilty plea. Id.

**B.** **Appeal**

The petitioner filed a direct appeal on August 25, 2004. (Crim. Dckt. 45.) The petitioner's direct appeal was dismissed on July 6, 2005. (Crim Dckt. 52.)

**C.** **Federal Habeas Corpus**

In his federal habeas petition, the petitioner raises the following grounds for relief:

(1) conviction obtained by plea of guilty that was unlawfully induced or not made voluntarily with a full understanding of the nature of the charge and the consequences of the plea because

    (a) counsel "forged" the date the petitioner signed the plea agreement, and

    (b) petitioner thought there would not be any enhancements for the dismissed counts;

(2) conviction obtained by use of an unlawful arrest because ATF Agent Robinson lied to the Magistrate Judge to obtain the arrest warrant;

(3) conviction obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the defendant;

(4) ineffective assistance of counsel because

    (a) counsel lacked the necessary experience to handle the case,

    (b) counsel failed to speak to a single witness or police officer,

    (c) counsel failed to call an explosives expert,

> (d) counsel forged the dates on the plea agreement,
>
> (e) counsel failed to object to incorrect base level,
>
> (f) counsel was not prepared at sentencing,
>
> (g) counsel failed to provide the petitioner with a copy of ATF lab reports;

(5) petitioner denied the right to appeal because of the appellate waiver he signed although he never understood the consequences of the waiver; and

(6) sentence improperly enhanced pursuant to United States v. Booker.[1]

## D. The Government's Response

In its response, the government asserts that the petitioner's claims lack merit and that the petitioner's § 2255 motion should be denied.

## E. Loveridge's Reply

In his reply, the petitioner argues that defense counsel never discussed the appellate waiver with him prior to his signing the plea agreement. However, the petitioner concedes that at his Rule 11 Hearing, Judge Keeley "took [the] time to explain paragraph 10 of the plea, she discussed a 10-year maximum sentence for felon in possession of a firearm and a 15-year minimum sentence for armed career offender, the rights I retained and the rights I was giving up. It was very confusing." Significantly, however, the petitioner does not assert that he did not understand any of these

---

[1] 543 U.S. 220 (2005). In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court held that "when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." In Booker, the Supreme Court held that Blakely applies to federal sentencing guidelines. More specifically, the Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial because a judge, not a jury, determines facts which could increase the defendant's sentence beyond the sentence which could be imposed based on jury fact finding. Consequently, the Supreme Court severed the unconstitutional provisions from the Sentence Reform Act and made the guidelines advisory.

concepts. The petitioner also makes several arguments in support of the claims raised in his petition.

## F.     Loveridge's Addendums

In the three addendums filed by the petitioner, he merely reiterates the arguments made in his petition and provides additional factual support for those claims.

## II.   Standard of Review

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." Attar at 731. The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For instance, the Court noted that a defendant "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived

8

his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in United States v. Lemaster, supra, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although, the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Lemaster, 403 F.3d at 732 (it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations").

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, the Court must first determine whether there is a valid waiver. In doing so,

> [t]he validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal.

> Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted). In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated, "[w]e do not think the general waiver of the right to challenge" a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel." Lemaster, 403 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing, are not barred by a general waiver-of-appeal rights.

However, several courts have distinguished IAC claims raised in a § 2255 case, from those raised on direct appeal. In Braxton v. United States, 358 F.Supp.2d 497 (W.D.Va. 2005), the Western District of Virginia noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F.Supp.2d 489, 493 (E.D. Va. 2001)). Nonetheless, the Western District of

10

Virginia, distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

The Western District of Virginia further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995), also supports such a distinction. Braxton at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

### III. Analysis

**A.     Validity of Waiver**

Upon a review of the petition, the undersigned concludes that if the petitioner's waiver is

11

valid, grounds one, two, three, four and five would be waived. The petitioner asserts, however, that his waiver was not valid because he did not understand the consequences of the waiver. This contention, however, is clearly refuted by the record.

Although the record shows that the petitioner may not have originally understood the nature and the consequences of the waiver, the transcripts of the plea hearing clearly show that the Court thoroughly explained both during the petitioner's Rule 11 Hearing. In addition, the petitioner was given copies of the applicable code sections and time to discuss those code sections with counsel. The nature and consequences of the waiver were explained to the petitioner on at least three different occasions by the Court, in addition to the explanation the petitioner received from counsel at the hearing. After each explanation, the petitioner stated that he understood the waiver and its consequences. In fact, the Court went to great lengths to make sure the petitioner understood the waiver and its consequences. The petitioner seemingly asserts that had he known the true consequences of the waiver, he would have had that provision stricken from the plea agreement. However, in this district, a waiver of appellate and collateral rights provision is generally a standard part of a plea agreement. It is unlikely, therefore, that even had the petitioner requested the removal of the waiver provision, that such removal would have been agreed to by the government. And, significantly, the petitioner does not assert that but for the waiver he would not have pled guilty.

**B.     Ground Six**

To the extent that the petitioner attempts to raise a claim pursuant to United States v. Booker, supra, that claim is without merit. See United States v. Morris, 429 F.3d 65 (2005) (Booker does not apply retroactively to cases on collateral review).

## IV. **Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be DENIED and DISMISSED from the Court's active docket.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: August 29, 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE